**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FELIX KARTTE, | |
|     Plaintiff, | |
|         v. | Civil Action No. 21-3310 (JEB) |
| TREVOR HUGH DAVIS, *et al.*, | |
|     Defendants. | |

**MEMORANDUM OPINION**

Defendant Trevor Davis hired Plaintiff Felix Kartte in 2020 to work at Davis's security-consulting companies.  Over the course of Plaintiff's brief employment and in the period following, Defendant allegedly called him offensive names, made threats, shared false information about him with third parties, and invented claims of extortion.  Plaintiff thus sued, alleging, *inter alia*, defamation, discrimination, and fraudulent misrepresentation.  After over six months of litigation, the parties reached a settlement agreement.  They now seek to seal the entire case record.  The Court denies that Motion because the documents at issue are judicial records that bear a strong presumption in favor of public access, which the parties have not overcome here.

I.      **Background**

Kartte began his employment with Davis in September 2020 as the Director of European Operation of CounterAction, LLC, one of Davis's companies.  See ECF No. 9 (Sec. Am. Compl.), ¶¶ 13–16.  Davis owns and operates both CounterAction, LLC and ToSomeone, Inc., which provide consulting services including "threat assessments, risk management, and

information operations."  Id., ¶ 13.  After Plaintiff began his new position, the two parties'

relationship quickly became acrimonious, with Davis firing him in a text message in November

2020.  The Court's prior Opinion provides all the gory details.  Kartte v. Davis, 2022 WL

1442789, at *1–2 (D.D.C. May 6, 2022).

       In December 2021, Kartte sued Davis and his two companies.  See ECF No. 1 (Compl.)

at 1.  In his Second Amended Complaint, the operative pleading here, Plaintiff alleged nine

separate counts including defamation, employment discrimination, tortious interference with

business relationships, fraudulent misrepresentation, intentional infliction of emotional distress,

and breach of contract.  See Sec. Am. Compl., ¶¶ 71–185.  Defendants then filed a Motion to

Dismiss, see ECF No. 10 (Mot. to Dismiss), which this Court granted in part and denied in part,

permitting three counts to proceed.  Kartte, 2022 WL 1442789, at *9.  Defendants thereafter filed

an answer and counterclaim, in which they alleged that Plaintiff was liable for conversion and

tortious interference with contractual relations.  See ECF No. 22 (Def. Answer) at 50-52.  Last

month, the parties settled and dismissed all remaining claims against each other.  See ECF No.

25 (Stipulation of Dismissal) at 1.  They now seek to seal the entire case record.  See ECF No. 26

(Jt. Mot. to Seal Case) at 2.

## II.    Legal Standard

       The right of "public access to judicial records 'is a fundamental element of the rule of

law, important to maintaining the integrity and legitimacy of an independent Judicial Branch.'"

Leopold v. United States, 964 F.3d 1121, 1127 (D.C. Cir. 2020) (quoting MetLife, Inc. v. Fin.

Stability Oversight Council, 865 F.3d 661, 663 (D.C. Cir. 2017)).  The common-law right

"antedates the Constitution," United States v. El-Sayegh, 131 F.3d 158, 161 (D.C. Cir. 1997),

and "serves to produce an informed and enlightened public opinion." Leopold, 964 F.3d at 1127 (quoting United States v. Hubbard, 650 F.2d 293, 315 n.79 (D.C. Cir. 1980)).

To determine if this right attaches to a document, a court first considers whether the subject material is a "judicial record."  Not every document filed with the court is deemed a judicial record — rather, "whether something is a judicial record depends on the 'role it plays in the adjudicatory process.'"  Id. at 1128 (quoting SEC v. Am. Int'l Grp., 712 F.3d 1, 3 (D.C. Cir. 2013)).  But "in all cases . . . materials filed in court [and] intended to influence the court qualify as judicial records."  In re Application for Access to Certain Sealed Video Exhibits, 546 F. Supp. 3d 1, 4 (D.D.C. 2021) (quoting United States v. Jackson, No. 21-115, 2021 WL 1026127, at *4 (D.D.C. Mar. 17, 2021)) (internal quotation marks omitted).

A "strong presumption in favor of public access" attaches to judicial records.  Leopold, 964 F.3d at 1127 (quoting Hubbard, 650 F.2d at 317).  This presumption, however, "may be outweighed in certain cases by competing interests."  MetLife, 865 F.3d at 665.  To balance the interests at stake, this Circuit in Hubbard designed a six-factor test.  See Hubbard, 650 F.2d at 317.  Specifically, the Court must weigh:

> (1) the need for public access to the documents at issue;
> (2) the extent of previous public access to the documents;
> (3) the fact that someone has objected to disclosure, and the identity of that person;
> (4) the strength of any property and privacy interests asserted;
> (5) the possibility of prejudice to those opposing disclosure; and
> (6) the purposes for which the documents were introduced during the judicial proceedings.

EEOC v. Nat'l Children's Center, Inc., 98 F.3d. 1406, 1409 (D.C. Cir. 1996) (citing and condensing Hubbard, 650 F.2d at 317–22).

### III.    Analysis

The Motion to Seal asserts that many of the documents are not judicial records, and that even if they are, the balance of the Hubbard factors weighs in favor of sealing.  See Jt. Mot. to Seal Case at 2–6.  The Court considers each point in turn.  As a threshold matter, it notes that the exhibits that this Court has already sealed are not affected by this decision.  See Minute Order of May 10, 2022 (sealing all exhibits contained in ECF No. 16).

#### A.    Judicial Records

A "judicial record" is material "filed in court," *In re* Application for Access to Certain Sealed Video Exhibits, 546 F. Supp. 3d at 4, that "the parties hope [will] influence the court, and upon which the court must base its decision."  MetLife, 865 F.3d at 667; see also CNN, Inc. v. FBI, 984 F.3d 114, 118 (D.C. Cir. 2021) (stating that "[if] the goal in filing a document is to influence a judge's decisionmaking, the document is a judicial record"); League of Women Voters of the U.S. v. Newby, 963 F.3d 130, 136 (D.C. Cir. 2020) (noting that "every part of every brief filed to influence a judicial decision qualifies as a 'judicial record'").  Applying that test, courts routinely find that documents filed on the docket are judicial records.  See MetLife, 865 F.3d at 668 (finding that briefs and appendices were judicial records because they were intended to influence court); Leopold, 964 F.3d at 1128–29 (finding that court orders, documents supporting orders, applications for orders, and court dockets were judicial records); Am. Int'l Grp., 712 F.3d at 3–4 (finding that investigation reports drafted by independent consultant as result of dispute-ending consent decree and not entered in docket were not judicial records).

Courts also consider the extent to which they have accessed or been able to access the material in question.  *In re* Application for Access to Certain Sealed Video Exhibits, 546 F. Supp. 3d at 6 (finding that videos referenced in documents but not entered into evidence or

presented to court did not qualify as judicial records); see also CNN, Inc., 984 F.3d at 118

(finding that declaration was part of judicial record in part because court "acknowledged having

read" it).

The parties' position that their filings are not judicial records is untenable. See Jt. Mot. to

Seal Case at 1. The unsealed documents on the docket have all been readily available to the

Court and, for the most part, were "intended to influence the [C]ourt." Leopold, 964 F.3d at

1128. For example, the Complaints, Motion to Dismiss, Opposition, Reply, and Answer and

Counterclaim are archetypical attempts to persuade the Court; others such as the Motions for

Extension of Time, Motion to Seal Exhibits, Motion for Leave to File a Second Amended

Complaint, and Motion to Seal the Case resulted, or will result, in judicial decisions. See, e.g.,

Minute Orders of March 8, 2022; March 21, 2022; April 18, 2022; May 16, 2022; June 9, 2022.

In addition, we apply the strongest presumption of public access to the Memorandum Opinion

issued by this Court on May 6, 2022, which, as an official decision of the Court, is considered

the "quintessential business of the public's institutions," Leopold, 964 F.3d at 1128 (quoting

Nat'l Children's Ctr., 98 F.3d at 1409), and is "core 'to the transparency of the court's

decisionmaking process.'" Id. (quoting MetLife, 865 F.3d at 668).

The Motion alternatively urges the Court that documents that did not affect the

Memorandum Opinion did not play a "role in any substantive decision by the Court" and are

therefore not judicial records. See Jt. Mot. to Seal Case at 3. To the extent that the parties

construe the Opinion as the only judicial decision in this case, they ignore the Minute Orders

directly deciding other Motions. See, e.g., Minute Orders of March 8, 2022 (granting ECF No. 8

(Mot. for Leave to File SAC)); March 21, 2022 (granting ECF No. 11 (Mot. for Extension of

Time)); May 16, 2022 (granting ECF No. 21 (Mot. to Seal Exhs.)). The documents that affected

the Court's decisionmaking, therefore, extend far beyond those directly cited by the Memorandum Opinion.

Affecting a judicial decision is not a prerequisite for a document to be a judicial record, however. If that were the only inquiry, it would be difficult to identify judicial records because a document "can affect a court's decisionmaking process even if the court's opinion never quotes or cites it." League of Women Voters, 963 F.3d at 136 (quoting MetLife, 865 F.3d at 667); see also id., 865 F.3d at 668 (noting that "the court read the [documents], including the parts it did not cite or quote"). The Court instead asks whether the record was "intended to influence the court," Leopold, 964 F.3d at 1128 (emphasis added), not whether it actually affected decisionmaking.

On a comprehensive review of the case's docket, the Court finds that six documents were not intended to influence it. Those are ECF Nos. 2 (Summons), 4 (Random Assignment to Boasberg, J.), 5 (Davis's Proof of Service), 6 (CounterAction's Proof of Service), 7 (ToSomeone's Proof of Service), and 25 (Stipulation of Dismissal). Yet, sealing those documents would not afford the relief that the parties are seeking because they do not contain any information that would be "damaging in the court of public opinion," as the Motion alleges. See Jt. Mot. to Seal Case at 2. As the parties make clear, their understandable preference is to seal the documents that describe the substance of the allegations. Id. at 1 n.1 (requesting, as an alternative to sealing entire record, that Court seal twelve documents, including, *inter alia*, Complaints, Motion to Dismiss, Memorandum Opinion, and Answer). In other words, nothing would be achieved by sealing those six documents.

The Court finds that all material unsealed documents in the docket here are judicial records.  They must, therefore, be afforded a "strong presumption in favor of public access." Leopold, 964 F.3d at 1127 (quoting Hubbard, 650 F.2d at 317).

B.  Hubbard Factors

The presumption can be overcome, however, if competing interests outweigh it.  The Hubbard test, in which the Circuit outlined the countervailing interests present in "motions to seal or unseal judicial records . . . has consistently served as [a] lodestar because it ensures that [courts] fully account for the various public and private interests at stake."  MetLife, 865 F.3d at 666.  The Motion to Seal asserts that the Hubbard factors weigh heavily in favor of sealing the record.  See Jt. Mot. to Seal Case at 4.  The Court finds that they do not.

The first factor is the need for public access to the documents at issue.  See Hubbard, 650 F.2d at 318.  The Motion emphasizes that that there is no "specific need" for public access because the dispute is private in nature, no party is of public prominence, and the services the companies provide are not linked to public health or welfare.  See Jt. Mot. to Seal Case at 4. While the Court agrees that there is no unique public need for the documents here, there is "a general right to inspect and copy . . . judicial records and documents," Nixon v. Warner Commc'ns, 435 U.S. 589, 597 (1978), and public access "serves the important function[] of ensuring the integrity of judicial proceedings."  Hubbard, 650 F.2d at 315.  The first factor, therefore, is in equipoise since the public's general need to access the already-available documents balances evenly against the fact that there is no specific need for the records in this case.  See Zapp v. Zhenli Ye Gon, 746 F. Supp. 2d 145, 149 (D.D.C. 2010) (finding that this factor weighed in favor of keeping documents unsealed despite court's agreement with movant that there was no "particularized need for public access").

7

The parties urge the Court to find that the second Hubbard factor, which considers the extent of previous public access to the documents, also weighs in favor of sealing.  See Jt. Mot. to Seal Case at 4–5; Hubbard, 650 F.2d at 318.  Specifically, they assert that six months of prior accessibility is a short period of time and thus sealing is still appropriate.  See Jt. Mot. to Seal Case at 4–5.  Hubbard, however, does not focus solely on the length of accessibility; it also asks "whether, when[,] and under what conditions" the documents have been publicly available.  See 650 F.2d at 318.  The facts that the documents have been accessible at all and that they were submitted to the Court voluntarily to persuade it weigh against sealing under the second factor. See In re Application of New York Times Co. for Access to Certain Sealed Court Records, 585 F. Supp. 2d 83, 93 (D.D.C. 2008) ("[T]hat much of the critical information is already in the public forum . . . weighs in favor of unsealing the . . . materials.").  Even if the Court accepts the Motion's construing of this factor as a strict quantification of the length of the record's availability, six months is nothing to sneeze at; plenty of time has passed for members of the public to have already accessed the record.  The second Hubbard factor, therefore, cuts against sealing.

The third factor considers whether someone has objected to disclosure and, if so, what her identity is in relation to the case.  Hubbard, 650 F.2d at 319.  When objectors to continued access are themselves the parties to the case, this factor favors sealing the documents.  See Zapp, 746 F. Supp. 2d at 149 (citing Nat'l Children's Ctr., 98 F.3d at 1410) (finding that because "[the movant] object[ed] to the continuing disclosure of the [d]ocuments, . . . this factor weigh[ed] in favor of [his] Motion").  The parties win this round.

The fourth Hubbard factor assesses the strength of any property and privacy interests asserted.  See 650 F.2d at 320.  The Motion claims that the unsealed documents on the record

will cause the parties "reputational damage and embarrassment" if they remain accessible to the public.  See Jt. Mot. to Seal Case at 5.  The Motion cites various cases in support of its contention that the parties' potential embarrassment and reputational damage create strong privacy interests.  Those cases, however, all involve materials that were either subject to a protective order, were not already accessible to the public, or were not already filed with the court.  See Willingham v. Ashcroft, 355 F. Supp. 2d 390, 391 (D.D.C. 2005) (finding strong privacy interests attached to information subject to a protective order); Roberson v. Bair, 242 F.R.D. 130, 132, 134 (D.D.C. 2007) (finding strong privacy interests attached to medical documents assessing party's incompetence that had not previously been publicly accessible or factored into court's decisionmaking); Anonymous v. Fed. Deposit Ins. Corp., 617 F. Supp. 509, 510 (D.D.C. 1985) (finding privacy interests attached to already-sealed records concerning a pending administrative proceeding).  Since the record in this case has long been docketed and publicly available and no documents are subject to a protective order, the Court does not find strong privacy interests that weigh in favor of sealing the currently unsealed documents.

In addition, any privacy interests that might be protected by sealing documents other than the Opinion are substantially weakened because the Opinion is unquestionably a judicial record with the strongest presumption of public availability, Leopold, 964 F.3d at 1128, and it contains most of the substantive information that the parties claim is damaging to their reputation.  See Jt. Mot. to Seal Case at 5.  In other words, the only real issue is the strength of the privacy interests that are implicated by the continued accessibility of documents beyond the Opinion.  Here, they are weak because the Opinion covers most of the sensitive ground contained in the other documents that the parties allege would embarrass them and damage their reputations.

The parties do not raise the fifth and sixth <u>Hubbard</u> factors in their Motion — namely, "the possibility of prejudice to those opposing disclosure[] and . . . the purposes for which the documents were introduced during the judicial proceedings," <u>Leopold</u>, 964 F.3d at 1131 (quoting <u>MetLife</u>, 865 F.3d at 665), but the Court will briefly assess them.  Regarding the fifth factor, the Court has just explained why continued access to unsealed documents beyond the Opinion only minimally prejudices the parties.  The sixth factor seems to add little to the test for public access to records, and the Court does not see how it cuts in favor of sealing in this case.

Since only the third <u>Hubbard</u> factor tips towards sealing the documents, the ultimate balance weighs in favor of keeping them publicly accessible.  This is what the Court will do.

## IV.     Conclusion

For the foregoing reasons, the Court will deny the parties' Joint Motion to Seal Case Record.  A separate Order so stating shall issue this day.

<u>/s/</u> *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  July 22, 2022